NEWSWEEK, INC., Plaintiff/Appellant,

v.

Kathryn Behm CELAURO, Commissioner of Revenue, State of Tennessee, Defendant/Appellee.

Supreme Court of Tennessee, at Nashville.

March 5, 1990.

Rehearing Denied May 14, 1990.

Charles A. Trost, Waller, Lansden, Dortch & Davis, Nashville, for plaintiff/appellant.

Charles W. Burson, Atty. Gen. and Reporter, Daryl J. Brand, Asst. Atty. Gen., Nashville, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

This suit was instituted for the recovery of sales taxes, penalty and interest paid by the plaintiff under protest. The defendant Commissioner of Revenue assessed a sales and/or use tax on plaintiff's mail order subscription sales during the period 1 January 1982 through 31 December 1984, pursuant to the Retailers' Sales Tax Act, T.C.A. § 67–6–201 et seq.

The issues presented for review here are substantially those found by the trial court and ruled upon adversely to the plaintiff. Those issues are:

(1) Is the plaintiff's publication, Newsweek, a "newspaper" within the meaning of the word used in T.C.A. § 67–6–329(3) and defined in Department of Revenue Regulation Sec. 1320–5–1–46, and thus exempt from imposition of a sales tax. (2) If Newsweek is "not a newspaper" does the imposition of a tax on sales of Newsweek as a magazine, denying it the newspaper exemption from the same tax, amount to a violation of plaintiff's constitutional rights in that:

    A. It violates plaintiff's constitutional guarantees of freedom of the press and freedom of expression under the First and Fourteenth Amendment to the United States Constitution and Article I, Sec. 19 of the Tennessee Constitution;

    B. It denies plaintiff's right to due process of law and equal protection under the guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Sec. 8 of the Tennessee Constitution.

(3) Does or not the plaintiff have sufficient nexus with the State of Tennessee to give the State a constitutionally valid jurisdictional basis to impose a sales tax on plaintiff's subscription sales of the Newsweek publication to residents of Tennessee.

(4) Is the imposition of a penalty against the plaintiff under the Tennessee tax law and regulations equitable and should the penalty be abated.

We look initially to the constitutional claims charging violation of plaintiff's first amendment guarantees of freedom of the press and freedom of expression. These claims are dispositive if found against the State.

■ The trial court held that plaintiff's reliance on the United States Supreme Court decision in *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987) was misplaced. He found that the Arkansas sales tax on tangible personal property, including publications, contained broad exemptions for newspapers and religious, professional, trade and sports journals, and/or publications printed and published in Arkansas. The effect of the exemptions was to single out a small group of magazines for taxation. It was the chancellor's view that the United States Supreme Court held the State's selective application of its sales tax to magazines to be violative of the First Amendment because the State failed to show that its content-based discrimination was necessary to serve a compelling State interest. The Court did not address whether the differential treatment of magazines and newspapers would invalidate the State tax. He held that the Tennessee Sales Tax Exemption was more narrowly drawn than that in *Ragland*. Although all newspapers are exempt, no magazines are exempt except certain religious publications, pursuant to T.C.A. § 67–6–323. He found the State had not singled out a small group of magazines for taxation. The compelling State interest advanced by defendant was to reduce regulations and further freedom of the press, which was a sufficiently compelling State interest to warrant exempting newspapers. He held that the decision to not exempt other periodicals from taxation was not a violation of freedom of the press or freedom of expression under the First Amendment. We disagree with the trial court's conclusion.

■ We begin this analysis with the proposition that the First Amendment does not prohibit all regulation of the press. The state and the federal governments may subject newspapers to generally applicable economic regulation, i.e., some form of taxation, without creating constitutional problems. See *Minneapolis Star & Tribune v. Minn., Com'r of Rev.*, 460 U.S. 575, 103 S.Ct. 1365, 1369, 75 L.Ed.2d 295 (1983). However, a tax that burdens rights protected by the First Amendment cannot stand unless the burden is necessary to achieve an overriding governmental interest, *id.* 103 S.Ct. at 1370. In the *Minneapolis Star* case the Court found that the State had not chosen to apply its general sales and use tax to newspapers generally but instead had created a special tax that applied only to certain publications protected by the First Amendment.

The State concedes that constitutional problems arise with respect to taxation of the press when a State's system of taxation singles out the press for special treatment and poses burdens on the press not applicable to other businesses. They argue that differential treatment of the press, as opposed to other businesses, does not occur under Tennessee Sales & Use Tax Statutes. They note that the plaintiff's grievance in this case is not that the press is singled out for special, burdensome tax treatment, but rather that some portion of the press, specifically newspapers, is afforded a tax exemption while elements of the press, including the plaintiff, are subject to the generally applicable sales and use tax. They assert that generally, statutory classifications and distinctions are valid if they are rationally related to legitimate governmental purposes.

It is the State's position that Tennessee's exemption of newspapers, while other types of publications are taxed, can be justified as a content-neutral distinction. They begin with the premise that the term "newspaper" can be defined as a function of the methods of a publishing business operation, rather than in terms of the subject matter or viewpoint of a given publication. They then syllogize that if a publication is defined in terms which are not based on content, tax officials need look only to the method of the publisher's business operation to determine whether its publications deliver news and information in a timely and immediate manner. Therefore in order to qualify as a newspaper and thus avoid First Amendment problems, under the principles requiring that statutes be construed so as to uphold their constitutionally, that definition of "newspaper" should be favored and applied to the language of T.C.A. § 67-6-329(a)(3). That other types of publications, while serving a useful public interest in disseminating information, may be rationally viewed by a legislature as not providing the immediacy which is needed by the public. Thus a legislature can rationally classify newspapers as nontaxable, and levying the tax on other publications does not interfere with or burden the freedom of the press.

■ This analysis does not pass muster in light of the requirement that in order to qualify for the newspaper exemption in Tennessee, among other things, a publication "must contain matters of general interest and reports of current events." Rule 46(2)(d). This is not a content-neutral requirement. As *Arkansas Writers',* supra, emphasizes, the First Amendment prohibits not only restrictions on particular viewpoints, it extends to prohibition of public discussion in its entirety. 107 S.Ct. at 1726.

In the *Arkansas* case the publisher of a general interest magazine brought suit challenging Arkansas's Sales Tax scheme. Arkansas, as does Tennessee, imposes a tax on receipts from sales of tangible personal property, but exempts numerous items, including newspapers and religious, professional, trade, and sports journals and/or publications printed and published within the State, familiarly known as the "magazine exemption." The Arkansas Supreme Court held that the magazine exemption applied only to religious, professional, trade, or sports periodicals. The United States Supreme Court at 107 S.Ct. at 1726–27, citing *Minneapolis Star,* supra at 103 S.Ct. 1371, and *Grosjean v. American Press Company,* 297 U.S. 233, 244–245, 56 S.Ct. 444, 446–447, 80 L.Ed. 660 (1936), stated, "our cases clearly establish that a discrimination tax on the press burdens rights protected by the First Amendment. In *Minneapolis Star* the discrimination took two distinct forms. First, in contrast to generally applicable economic regulations to which the press can legitimately be subject, the Minnesota use tax treated the press differently from other enterprises.... Second, the tax targeted a small group of newspapers.... Both types of discrimination can be established even where, as here, there is no evidence of an improper censorial motive.... This is because selective taxation of the press—either singling out the press as a whole or targeting individual members of the press—poses a particular danger of abuse by the State. 'A power to tax differentially, as opposed to a power to tax generally,

gives a government a powerful weapon against the taxpayer selected. When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of tax payers by burdensome taxation if it must impose the same burden on the rest of its constituency,' ".

Noting that a tax that singles out the press, or that targets individual publications within the press, places a heavy burden on the State to justify its action, the Court held that Arkansas had advanced no compelling justification for selective, content-based taxation of certain magazines. They held the tax invalid under the First Amendment.

The State here argues that the newspaper exemption of T.C.A. § 67–6–329(a)(3) furthers a vital public purpose and compelling public interest by providing immediate and timely dissemination of information to the public. At the same time it is argued that computer networks, radio, television and other electronic media help fill this need, but are not normally subject to sales and use tax because their transmissions of information often do not involve transfers of tangible personal property.

In our view, the immediate provision of news is not a compelling governmental interest. There is nothing to suggest that newspapers require an exemption in order to furnish such immediacy in bringing the news to the public. Further, there is no basis for giving immediate news a privileged position over other avenues of news reporting which is accompanied by more deliberative analysis or commentary. It is not a legitimate function of the government to decide which information furthers better the public interest. Moreover, the exemption statute is not narrowly tailored to meet the asserted governmental interest. Newsweek publishes as frequently as many exempt newspapers. With the application of current day technology, its "news" is no more stale than that of newspapers publishing weekly.

The trial court found that the purpose in exempting newspapers from taxation was to further freedom of the press and to reduce regulation in the area of the press and held that to be a sufficiently compelling State interest to warrant the exemption. The State does not defend those issues here but relies on its argument that the Tennessee Sale & Use Tax system withstands constitutional challenge because it is rationally related to the promotion of vital and compelling public interest and Tennessee's distinction between newspapers and other publications is not based upon content, but can be defined and justified as content-neutral.

■ The tax that singles out the press, or that targets individual publications within the press, places a heavy burden on the State to justify its action. *Minneapolis Star*, supra, 103 S.Ct. at 1376. In this case the State has failed to meet this heavy burden. It has advanced no compelling justification for selective, content based taxation of plaintiff's publication. We hold therefore the tax is invalid under the First Amendment.

■ The chancellor also ruled on the issue of whether a tax on plaintiff's non-religious publications while exempting certain religious publications from taxation is an unconstitutional establishment of religion. That issue is neither presented nor argued here and thus we consider it pretermitted, as well as other issues have been pretermitted by our finding that the Tennessee tax scheme is invalid as it applies to this plaintiff. Nonetheless we believe the issue has been settled by the United States Supreme Court opinion in *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989).

The judgment of the trial court is reversed. The case is remanded for such other and further proceedings as may be required. The costs on this appeal are assessed against the defendant.

DROWOTA, C.J., FONES & HARBISON, JJ., and CORNELIUS, Special Justice, concur.

## ORDER ON PETITION TO REHEAR

PER CURIAM.

The Court has carefully reviewed the grounds stated in the petition to rehear,

and conclude that we have not misapprehended either the law or the facts.

The petition to rehear is denied.