565 So.2d 1304 (1990)
DEPARTMENT OF REVENUE, Appellant,
v.
MAGAZINE PUBLISHERS OF AMERICA, INC., et al., Appellees.
No. 75201.
Supreme Court of Florida.
May 31, 1990.
Rehearing Denied September 10, 1990.
Robert A. Butterworth, Atty. Gen., and Kevin J. O'Donnell, Asst. Atty. Gen., Tallahassee, for appellant.
James M. Ervin, Jr. and Michael L. Rosen of Holland & Knight, Tallahassee, for Magazine Publishers of America, Inc., The Hearst Corp., Time, Inc., Golf Digest/Tennis, Inc., and Meredith Corp.
Laura Besvinick of Greer, Homer & Bonner, P.A., Miami, for The Miami Herald Pub. Co.
Barry Richard and William L. Hyde of Roberts, Baggett, LaFace & Richard, Tallahassee, for The Florida Press Ass'n, The Tallahassee Democrat, Inc., Florida Pub. Co., and Citrus Pub. Co., Inc.
Timothy J. Warfel of Messer, Vickers, Caparello, French, Madsen & Lewis, P.A., Tallahassee, for Florida Catholic Conference, Inc., The Voice Pub. Co., Inc., and Daughters of St. Paul, Inc.
Cecil L. Davis, Jr., Tallahassee, for Florida Baptist Witness, Inc.
EHRLICH, Chief Justice.
Magazine Publishers of America, Inc.; The Hearst Corporation, Time, Inc.; Golf Digest/Tennis, Inc.; and Meredith Corporation (Magazine Publishers) filed suit against the Florida Department of Revenue (Department) challenging the constitutionality of the imposition of sales tax on the retail sale of secular magazines pursuant to chapter 212, Florida Statutes (1987). The trial court granted the Magazine Publishers' motion for summary judgment.[1] *1305 In its order, the trial court found that "Chapter 212 clearly imposes a differential tax on the press, singling out magazines for taxation while exempting newspapers." The trial court also found that the Department failed to assert a compelling state interest sufficient to support the differential tax. Accordingly, the trial court held the tax imposed on magazines to be an unconstitutional violation of the first amendment of the United States Constitution and ordered that the Department be enjoined from collecting the tax on magazines. Upon appeal by the Department, the First District Court of Appeal certified the question involved to be one of great public importance that requires immediate resolution by this Court. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.
Under Florida's sales and use taxation scheme, sales tax is levied on retail sales of secular magazines while retail sales of newspapers are exempt from taxation. §§ 212.05(1)(i), .06(9),.08(7)(w), Fla. Stat. (1987 & Supp. 1988). Section 212.05(1)(i), Florida Statutes (Supp. 1988), provides:
(1) ... [A] tax is levied on each taxable transaction or incident, which tax is due and payable as follows:
... .
(i) At the rate of 6 percent on the retail price of magazines sold or used in Florida.
Section 212.08(7)(w), Florida Statutes (Supp. 1988), which sets forth miscellaneous exemptions, provides:
(w) Newspapers  Likewise exempt are newspapers.
The Magazine Publishers assert that the differential taxation of magazines violates the free speech and free press clauses of the first amendment and the equal protection clause of the fourteenth amendment to the United States Constitution, as well as article I, sections 2 and 4, of the Florida Constitution.[2]
The Department and the Newspapers contend that the statutory distinction between magazines and newspapers for purposes of the Florida sales and use tax is constitutionally permissible. These parties argue that the trial court erred in concluding that the appropriate standard by which to judge the differential treatment of the publications is a "strict scrutiny" standard, rather than a "rational basis" test, and in concluding that the differential taxation of magazines is unconstitutional under the first amendment of the United States Constitution. We reject the position asserted by the Department and the Newspapers.
The first amendment of the United States Constitution provides that Congress shall make no law abridging freedom of speech or freedom of the press. The first amendment clearly "does not prohibit all regulation of the press. It is beyond dispute that the States and the Federal Government can subject newspapers to generally applicable economic regulations without creating constitutional problems." Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575, 581, 103 S.Ct. 1365, 1369, 75 L.Ed.2d 295 (1983). However, "a discriminatory *1306 tax on the press burdens rights protected by the First Amendment." Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 1726, 95 L.Ed.2d 209 (1987) (footnote omitted). It is clear from the Court's analysis in both Ragland and Minneapolis Star that Florida's statutory differentiation between secular magazines and newspapers for purposes of sales taxation burdens rights protected by the first amendment.
In Minneapolis Star, Minnesota enacted a "use tax" on the cost of paper and ink products consumed in the production of a publication as part of the state's sales and use taxation scheme. A subsequent amendment exempted the first $100,000 worth of ink and paper consumed in any calendar year. After the enactment of the $100,000 exemption,
11 publishers, producing 14 of the 388 paid circulation newspapers in the State, incurred a tax liability in 1974. Star Tribune was one of the 11, and, of the $893,355 collected, it paid $608,634, or roughly two-thirds of the total revenue raised by the tax. In 1975, 13 publishers, producing 16 out of 374 paid circulation papers, paid a tax. That year, Star Tribune again bore roughly two-thirds of the total receipts from the use tax on ink and paper.
Minneapolis Star, 460 U.S. at 578-79, 103 S.Ct. at 1368 (citations omitted). The Court rejected the state's argument that the tax was valid, finding two distinct forms of discrimination.
First, in contrast to generally applicable economic regulations to which the press can legitimately be subject, the Minnesota use tax treated the press differently from other enterprises.[[3]] Second, the tax targeted a small group of newspapers. This was due to the fact that the first $100,000 of paper and ink were exempt from the tax; thus "only a handful of publishers pay any tax at all, and even fewer pay any significant amount of tax."
Ragland, 107 S.Ct. at 1727 (citations omitted). Thus, the first type of discriminatory tax identified in Minneapolis Star is a special tax that applies only to publications protected by the first amendment. 460 U.S. at 581, 103 S.Ct. at 1369. The second type of discriminatory tax identified is one that is tailored in such a way that it singles out or targets individual publications within the press. Id. at 591, 103 S.Ct. at 1375.
The Court held that such differential, discriminatory taxation of the press places a burden on the interests protected by the first amendment. Id. at 585, 103 S.Ct. at 1371. As the Court noted:
A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected. When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency. When the State singles out the press, though, the political constraints that prevent a legislature from passing crippling taxes of general applicability are weakened, and the threat of burdensome taxes becomes acute. That threat can operate as effectively as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government.
Id. at 585, 103 S.Ct. at 1371 (citations omitted). The Court also recognized the great potential for abuse that would be presented by recognizing a power in the state to tax selected members of the press. Id. at 592, 103 S.Ct. at 1375.
In Ragland, the Court again addressed the issue of differential taxation of publications protected by the first amendment. The Arkansas sales tax scheme examined by the Court in Ragland taxed general interest magazines, but exempted newspapers and religious, professional, trade, and *1307 sports journals. The question presented was whether Arkansas' system of selective taxation of publications violated the First Amendment's guarantee of freedom of the press. The Court again emphasized the danger of abuse by the state that is posed by differential treatment of entities in the press. The Court noted that both types of discrimination identified in Minneapolis Star could be established even where there is no evidence of an improper censorial motive "because selective taxation of the press  either singling out the press as a whole or targeting individual members of the press  poses a particular danger of abuse by the State." Ragland, 107 S.Ct. at 1727. The Arkansas tax scheme resulted in only a few Arkansas magazines paying any sales tax. The Court concluded that "[b]ecause the Arkansas sales tax scheme treats some magazines less favorably than others, it suffers from the second type of discrimination identified in Minneapolis Star." Id. In other words, although the tax is nominally imposed on receipts from sales of all tangible personal property, it targets individual members of the press. Id. The tax imposed on selective magazines was declared invalid.
The holding in Ragland eliminated the differential treatment between general interest magazines and the exempt special interest magazines. Because the tax on general interest magazines was declared invalid, magazines previously subject to sales tax would be treated no differently for tax purposes than the magazines specifically exempted from the tax. This holding also had the effect of eliminating the differential treatment of newspapers and magazines; neither general interest magazines, special interest magazines, nor newspapers would be subject to sales tax. Accordingly, the Court declined to decide whether a distinction between different types of periodicals presented an additional basis for invalidating the sales tax as applied to the press. Id. 107 S.Ct. at 1729.
Ragland nonetheless mandates affirming the trial court's ruling below that the scheme at issue in the case at bar is unconstitutional under the first amendment. Ragland stands for the proposition that the first amendment prohibits a state from identifying a class or group of publications protected by the first amendment and imposing a differential, discriminatory tax on some members of the class or group.[4]Ragland clearly indicates that a state may not tax some types of magazines while exempting other types of magazines. The same first amendment concerns are present when a state tax scheme differentiates between different types of periodicals, i.e., taxing sales of magazines while exempting sales of newspapers.[5]
Like the Arkansas sales tax at issue in Ragland, the Florida sales tax cannot be characterized as a nondiscriminatory tax on the receipts of magazines because it is not evenly applied; the scheme treats some periodicals protected by the first amendment less favorably than other periodicals. Florida's scheme accordingly suffers from the second type of discrimination identified in Minneapolis Star, targeting individual members of the press for selective taxation. The decisions of the United States Supreme Court "clearly establish that a discriminatory tax on the press burdens rights protected by the First Amendment." *1308 Ragland, 107 S.Ct. at 1726. As the Court stated in Minneapolis Star, "we think that recognizing a power in the State not only to single out the press but also to tailor the tax so that it singles out a few members of the press presents such a potential for abuse that no interest suggested by Minnesota can justify the scheme." 460 U.S. at 592, 103 S.Ct. at 1375.
Because the differential taxation of magazines under Florida's sales tax scheme burdens rights protected by the first amendment, the trial court correctly applied the "strict scrutiny" standard in determining whether such differential taxation is permissible. "A tax that singles out the press, or that targets individual publications within the press, places a heavy burden on the State to justify its action." Minneapolis Star, 460 U.S. at 592-93, 103 S.Ct. at 1376. "In order to justify such differential taxation, the State must show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end." Ragland, 107 S.Ct. at 1728.[6]
Under a "strict scrutiny" analysis, the differential taxation of the press cannot be sustained "unless the State asserts a counterbalancing interest of compelling importance that it cannot achieve without differential taxation." Id. The Department, in reliance upon its argument that the proper standard for analyzing the differential taxation of publications at issue is the "rational basis" standard, did not assert any compelling interest which may justify the differential treatment. The only interest asserted to justify the scheme, under any standard, was a significant public interest in promoting publishers who engage in the immediate dissemination of news; in publishing news while it is new. This asserted interest is clearly not a compelling governmental interest. It is questionable whether this asserted interest would survive even a rational relation analysis. As recognized in Newsweek, Inc. v. Celauro, 789 S.W.2d 247, 250 (Tenn. 1990):
There is nothing to suggest that newspapers require an exemption in order to furnish such immediacy in bringing the news to the public. Further, there is no basis for giving immediate news a privileged position over other avenues of news reporting which is accompanied by more deliberative analysis or commentary. It is not a legitimate function of the government to decide which information furthers better the public interest. Moreover, the exemption statute is not narrowly tailored to meet the asserted governmental interest. Newsweek publishes as frequently as many exempt *1309 newspapers. With the application of current day technology, its "news" is no more stale than that of newspapers publishing weekly.
Accordingly, we affirm that portion of the trial court's order which concludes that the rationale offered by the Department for the differential treatment does not serve a compelling state interest and that chapter 212, Florida Statutes (1987 & Supp. 1988), unconstitutionally differentiates between magazines and newspapers, burdening first amendment rights.[7]
The Department next contends that if the trial court was correct in its conclusion that differential treatment is invalid, the proper solution is to sever the exemption for newspapers. We agree. Magazine Publishers erroneously contend that "[u]nder federal constitutional law, it is the Florida sales tax on magazines that impermissibly burdens freedom of the press and that must be stricken to remedy the constitutional defect." As noted above, Florida's sales tax scheme unconstitutionally burdens first amendment interests due to the differential treatment of magazines and newspapers. It does not follow from this that it is the tax on magazines that is unconstitutional.
The trial court concluded that striking the tax on magazines was the mandated result under federal constitutional law. In so concluding, the trial court erroneously relied upon three decisions of the United States Supreme Court. In the first, Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), the state of Louisiana enacted a license tax applicable only to publishers in the business of selling or charging for advertising when published in any type of publication with a designated circulation volume. Removing the internal "exemption" for smaller papers from the license tax would not have rendered the advertising license tax an "ordinary form of taxation." Accordingly, the Court affirmed the decree declaring the license tax unconstitutional. Similarly, in Minneapolis Star, the state created a special tax which had the effect of "singling out publications for treatment that is ... unique in Minnesota tax law" rather than applying its general sales and use tax to newspapers. 460 U.S. at 581, 103 S.Ct. at 1369. The special use tax exempted the first $100,000 of ink and paper used. Removing this internal exemption would not have rendered the tax one of general applicability. Rather, the tax would still have been applicable only to publications. Although striking the tax was the result reached in Grosjean and Minneapolis Star, the same result is not constitutionally mandated in the case at bar, which is factually distinguishable. Under Florida's sales tax scheme, magazines are not singled out for taxation. Rather, other sales of tangible personal property involving first amendment expression, such as books, periodicals, journals, advertising supplements, and information services, are subject to the tax.
Finally, in Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), the state sales tax scheme taxed general interest magazines, but specifically exempted newspapers and religious, trade, professional, and sports magazines. The Court held "that the State's selective application of its sales tax to magazines is unconstitutional and therefore invalid." Id. 107 S.Ct. at 1729. The Court stated, in conclusion, that "the tax is therefore invalid under the First Amendment." Id. 107 S.Ct. at 1730. Although it appears that the Court struck the tax rather than eliminate the exemptions, no language in the decision indicates that such a result is always constitutionally mandated. Indeed, it appears that the Court is of the opinion that there is no mandatory course of action in a case such as the one at bar. In Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), the state argued that a publisher of a general interest magazine *1310 had no standing to challenge the state's sales tax exemption for periodicals distributed by a religious faith that consist wholly of writings promulgating the teaching of the faith. The state claimed that if the scheme were improper, the proper course under state law would be to remove the exemption, rather than to extend it to nonreligious periodicals. The Court responded that
[i]t is not for us to decide whether the correct response as a matter of state law to a finding that a state tax exemption is unconstitutional is to eliminate the exemption, to curtail it, to broaden it, or to invalidate the tax altogether.
Id. 109 S.Ct. at 896.
We conclude that the correct response in the case at bar under Florida law is elimination of the exemption. Section 212.05(1)(a), Florida Statutes (1987), levies a tax on "the sales price of each item or article of tangible personal property when sold at retail in this state." Section 212.05(1)(i) specifically states that sales of magazines are taxable transactions.[8] Section 212.21, Florida Statutes (1987), expressly declaring the legislative intent of chapter 212, provides in part:
(2) It is hereby declared to be the specific legislative intent to tax each and every sale, admission, use, storage, consumption or rental levied and set forth in this chapter, except as to such sale, admission, use, storage, consumption, or rental, as shall be specifically exempted therefrom by this chapter, subject to the conditions appertaining to such exemption. It is further declared to be the specific legislative intent that should any exemption or attempted exemption from the tax or the operation or imposition of the tax or taxes be declared to be invalid, ineffective, inapplicable, unconstitutional or void for any reason, such declaration shall not affect the tax or taxes imposed herein, but such sale, admission, use, storage, consumption or rental or any of them exempted or attempted to be exempted from the tax or taxes or the operation or the imposition of the tax or taxes, shall be subject to the tax or taxes and the operation and imposition therefor to the same extent as if such exemption or attempted exemption had never been included herein.

(3) It is further declared to be the specific legislative intent to exempt from the tax or taxes or from the operation or the imposition thereof only such sales, admissions, uses, storages, consumption or rentals in relation to or in respect of the things set forth by this chapter as exempted from the tax to the extent that such exemptions are in accordance with the provisions of the constitutions of the state and of the United States. It is further declared to be the specific legislative intent to tax each and every taxable privilege made subject to the tax or taxes ... except such sales, admissions, uses, storages, consumptions or rentals as are specifically exempted therefrom by this chapter to the extent that such exemptions are in accordance with the provisions of the constitutions of the state and of the United States.
(Emphasis added.) Section 212.21 makes it unmistakably clear that as between the imposition of the tax or the granting of an exemption, the tax shall prevail.
Accordingly, we affirm that portion of the trial court's order which holds that chapter 212, Florida Statutes (1987), unconstitutionally differentiates between magazines and newspapers, thereby impermissibly burdening first amendment rights. Having concluded that the appropriate remedy under Florida law is to strike the exemption granted to newspapers pursuant to section 212.08(7)(w), Florida Statutes (Supp. 1988), we reverse that portion of the trial court's order which concludes that the *1311 appropriate remedy is to strike the tax imposed on magazines. This decision shall become final ninety days after issuance of mandate.
It is so ordered.
OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., did not participate in this case.
NOTES
[1] The summary judgment motions of The Miami Herald and the Florida Press Association (Newspapers), intervenors in the action, were also granted, to the extent that they asserted that the sales tax on magazines should be invalidated. The circuit court denied the amended motion for summary judgment filed by the Department.
[2] Count I of Magazine Publishers' complaint also alleged that taxation of secular magazines, while exempting religious magazines, had a chilling effect on first amendment rights. After the trial court indicated that it might consider the validity of the religious publication exemption, Florida Catholic Conference, Inc.; The Voice Publishing Co., Inc.; Daughters of St. Paul, Inc., and The Florida Baptist Witness, Inc., filed motions to intervene, which were granted by the court. Subsequent to the intervention, Magazine Publishers filed a motion for leave to amend the complaint to delete all reference in the pleadings to the exclusion of religious publications. The court denied the motion for leave to amend, but later granted the intervenors' motion to strike all evidence concerning the exclusion of religious publications, concluding that the issue of the constitutionality and application of section 212.06(9), Florida Statutes (1987) (religious publication exclusion), was not properly placed in issue by the pleadings in this action. No reference was made to the religious publication exclusion in the order granting final summary judgment and no challenge has been raised in this proceeding to the trial court's order granting the motion to strike. Accordingly, we decline to consider the constitutionality or application of the religious publication exclusion at this point in time.
[3] Ink and paper used in publications were the only items that were components of goods to be sold at retail which were subject to the use tax.
[4] As the Court noted at the outset of its analysis in Ragland, the "First Amendment claims are obviously intertwined with interests arising under the Equal Protection Clause. However, since Arkansas' sales-tax system directly implicates freedom of the press, we analyze it primarily in First Amendment terms." Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 1726 n. 3, 95 L.Ed.2d 209 (1987).
[5] It is clear that the Court's conclusion in Ragland was not based merely on the fact that the differentiation between the magazines was content based. The Court first determined that the tax at issue in Ragland was discriminatory because it was not evenly applied to all magazines, thus suffering from the second type of discrimination identified in Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). The fact that the basis on which Arkansas differentiated between magazines depended upon the content of the magazine merely served to make the differentiation "particularly repugnant to First Amendment principles," such that the case involved "a more disturbing use of selective taxation than Minneapolis Star." Ragland, 107 S.Ct. at 1727.
[6] The reliance upon Regan v. Taxation with Representation of Washington, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983), by the Department and the Newspapers is misplaced. In Regan, Taxation with Representation of Washington (TWR), a nonprofit corporation, brought a free speech clause challenge against a federal regulation which provided that taxpayers who contribute to charitable organizations that engage in substantial lobbying to advance their exempt purposes can not deduct the amount of their contributions on their federal income tax returns. Contributions made to charitable organizations that do not engage in substantial lobbying can be deducted by taxpayers on their federal income tax returns. The Court rejected TWR's first amendment argument, noting that TWR was not denied "any independent benefit on account of its intention to lobby." Id. at 545, 103 S.Ct. at 2001. The Court concluded that "Congress has not infringed any First Amendment rights or regulated any First Amendment activity." Id. at 546, 103 S.Ct. at 2001.

We agree with the Magazine Publishers that it "is noteworthy that the Court decided Regan approximately two months after the decision in Minneapolis Star, yet Regan made no reference whatsoever to Minneapolis Star." Answer Brief of Appellees MPA, Hearst, Time, Golf Digest, and Meredith at 14. The majority decision in Ragland, issued approximately four years after the decision in Regan, makes no mention of Regan. Justice Scalia's dissenting opinion in Ragland sets forth the argument that the Court's opinions "have long recognized  in First Amendment contexts as elsewhere  the reality that tax exemptions, credits, and deductions are `a form of subsidy that is administered through the tax system,' and the general rule that `a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny,'" relying upon Regan. Ragland, 107 S.Ct. at 1731 (Scalia, J., dissenting) (citation omitted). This argument, which is similar to the argument here asserted by the Department and the Newspapers, warranted no comment from the majority. Clearly a majority of the Court view Ragland and Regan as involving different issues under the first amendment.
[7] We reject the Department's contention that the trial court erroneously "overruled" Gasson v. Gay, 49 So.2d 525 (Fla. 1950). As is obvious from the authority cited therein, the decision in Gay dealt only with an equal protection challenge. But to the extent it is inconsistent, we recede therefrom.
[8] Section 212.05(1)(i), Florida Statutes (1987), may be considered superfluous. It is not disputed that magazines are within the definition of tangible personal property set forth in section 212.02(20), Florida Statutes (1987), and that such transactions would therefore be taxable under section 212.05(1)(a) without regard to section 212.05(1)(i). Section 212.05(1)(i), however, reinforces the legislative intent expressed in section 212.05(1)(a) that sales of magazines be taxed.