604 So.2d 459 (1992)
DEPARTMENT OF REVENUE, Appellant,
v.
MAGAZINE PUBLISHERS OF AMERICA, Inc., et al., Appellees.
No. 75201.
Supreme Court of Florida.
July 23, 1992.
Rehearing Denied September 23, 1992.
*460 Robert A. Butterworth, Atty. Gen. and Kevin J. ODonnell, Asst. Atty. Gen., Tallahassee, for appellant.
James M. Ervin, Jr. and Lawrence P. Stevenson of Holland & Knight, Tallahassee, on behalf of Magazine Publishers of America, Inc., The Hearst Corp., Time, Inc., Golf Digest/Tennis, Inc., and Meredith Corp., Laura Besvinick of Greer, Homer & Bonner, P.A., Miami, on behalf of The Miami Herald Pub. Co., and Barry S. Richard and William L. Hyde of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Tallahassee, on behalf of The Florida Press Ass'n, The Tallahassee Democrat, Inc., Florida Pub. Co., and Citrus Pub. Co., Inc., for appellees.
PER CURIAM.
This case is before the Court on remand from the United States Supreme Court for reconsideration of our decision in Department of Revenue v. Magazine Publishers of America, Inc., 565 So.2d 1304 (Fla. 1990), vacated, Miami Herald Publishing Co. v. Department of Revenue, ___ U.S. ___, 111 S.Ct. 1614, 113 L.Ed.2d 712 (1991).
Magazine Publishers of America, Inc.; The Hearst Corporation; Time, Inc.; Golf Digest/Tennis, Inc.; and Meredith Corporation (Magazine Publishers) filed suit against the Department of Revenue (Department), challenging the constitutionality of the imposition of sales tax on the retail sales of secular magazines pursuant to chapter 212, Florida Statutes (1987). The trial court granted the Magazine Publishers' motion for summary judgment, and also granted the summary judgment motions of intervenors the Miami Herald Publishing Company and the Florida Press Association to the extent that they asserted that the sales tax on magazines should be invalidated. Finding that chapter 212 imposed a differential tax on the press and that the Department failed to assert a compelling state interest which would support the tax, the trial court held that the tax was an unconstitutional violation of the First Amendment of the United States Constitution. The trial court also ordered that the Department be enjoined from collecting the tax on magazines. Upon appeal by the Department, the First District Court of Appeal certified that the trial court's order *461 passed upon a question of great public importance requiring immediate resolution by this Court.
This Court accepted jurisdiction pursuant to article V, section 3(b)(5), Florida Constitution, and upon review, affirmed in part and reversed in part the trial court's order. Department of Revenue v. Magazine Publishers of America, Inc., 565 So.2d 1304 (Fla. 1990). The Court affirmed the trial court's order finding that chapter 212 unconstitutionally burdened First Amendment interests, but reversed that part of the order striking the tax imposed on magazines. This Court concluded that under state law the proper solution was to eliminate the exemption for newspapers.
The United States Supreme Court granted the Miami Herald Publishing Company's petition for a writ of certiorari, vacated the judgment of this Court, and remanded for further consideration in light of Leathers v. Medlock, ___ U.S. ___, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991).
In Leathers, the United States Supreme Court considered the constitutionality of an Arkansas sales tax scheme that exempted both magazine and newspaper sales from taxation while imposing a sales tax on cable television. The Supreme Court noted that differential taxation of the media does not by itself raise First Amendment concerns. 111 S.Ct. at 1442. Instead, differential taxation of First Amendment speakers only triggers heightened scrutiny under the First Amendment if the tax: 1) singles out the press; 2) targets a small group of speakers; or 3) discriminates on the basis of the content of the speech. Id. at 1443-44. Finding that the Arkansas tax presented none of these types of discrimination, the Supreme Court concluded that "the State's extension of its generally applicable sales tax to ... cable and satellite services, while exempting the print media, does not violate the First Amendment." Id. at 1447.
The first issue before this Court on remand is whether Florida's differential tax scheme triggers heightened scrutiny under the First Amendment. Florida's sales tax is a tax of general applicability, which applies to receipts from the sales of all tangible personal property unless specifically exempted, and does not single out the press for special treatment. The state may impose a generally applicable tax on the press without raising First Amendment concerns. Id. at 1444; see also Jimmy Swaggart Ministries v. Board of Equalization, 493 U.S. 378, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990).
In Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), the Supreme Court declared invalid an Arkansas sales tax scheme which taxed general interest magazines, but exempted newspapers and religious, professional, trade, and sports journals. Unlike Arkansas Writers' where the "burden of the tax clearly falls on a limited group of publishers," 481 U.S. at 229 n. 4, 107 S.Ct. at 1728 n. 4, Florida's taxation scheme applies uniformly to the retail sales of all secular magazines and does not select a narrow group of publishers to bear the burden of the tax. The trial court's final summary judgment states that Magazine Publishers of America, Inc. is "a national trade association comprised of 213 publishers" and that "[m]ost, if not all, of these publishers sell magazines and other publications to Florida residents." The extension of Florida's sales tax to this large number of publishers does not resemble the discriminatory tax which the Supreme Court invalidated in Arkansas Writers', where at most only three Arkansas magazines were subject to the tax. Id. at 229 & n. 4, 107 S.Ct. at 1728 & n. 4.
Thus, Florida's tax does not discriminate either by singling out the press for a special tax or by targeting a small group within the press to bear the burden of the tax. However, the third circumstance which would trigger a heightened scrutiny analysis under the First Amendment, that the tax discriminates on the basis of the content of the speech, does pose a problem in this case. Like the statute at issue in Leathers, the language of Florida's sales tax statute does not refer to the content of *462 the media taxed or exempted.[1] However, unlike Leathers, the record shows that the content of a publication is a key factor in determining whether the publication is subject to taxation.
In Leathers, the Supreme Court found that cable television offered subscribers a mixture of news, information, and entertainment and that there was no record evidence "that this material differs systematically in its message from that communicated by satellite broadcast programming, newspapers, or magazines." Id. 111 S.Ct. at 1445. Consequently, the Supreme Court determined that the Arkansas sales tax is not content based.
In contrast, the deposition of the Assistant Executive Director of the Department indicates that the Department will "review the content of the publication" to determine whether a publication qualifies for the newspaper exemption. In reviewing a publication, the Department is guided by Florida Administrative Code Rule 12A-1.008(1)(b) which specifies that "[i]n order to constitute a newspaper, the principal purpose of the publication must be to disseminate news." The rule also provides that the publication must contain five enumerated elements in order to constitute a newspaper.[2] While most of these elements relate to the form or frequency of publication, the fifth element requires the Department to evaluate the contents of the publication to determine whether it contains "reports of current events and matters of general interest which appeal to a wide spectrum of the general public." Fla. Admin. Code R. 12A-1.008(1)(b)5.[3] This is not a content-neutral requirement. As the Supreme Court emphasized in Arkansas Writers', "`[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.'" 481 U.S. at 230, 107 S.Ct. at 1728 (alteration in original) (quoting Consolidated Edison Co. v. Public Service Comm'n, 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980)).
Because Florida's differential taxation of the press is content-based, the tax must withstand heightened scrutiny under the First Amendment. See Leathers, 111 S.Ct. at 1444. In order to pass this strict scrutiny muster, the tax must serve some compelling state interest and must be narrowly drawn to achieve that end. See Arkansas Writers', 481 U.S. at 231, 107 S.Ct. at 1728. The Department argues that the newspaper exemption furthers the compelling state interest of encouraging the literacy and general knowledge of Florida's citizens. *463 Although the State has a legitimate interest in fostering literacy, we find that this tax scheme is not narrowly tailored to achieve that end. The State need not look to the content of publications to attain the desired goal of increased public knowledge and literacy. Moreover, magazines and other publications not eligible for the exemption also provide a wealth of information to the public.
The Department asserted for the first time at oral argument that the newspaper exemption is related to the fact that newsprint can be recycled while slick magazine paper cannot. If the Department looked solely to the type of paper or other format-based criteria in determining whether a publication will be taxed or is exempt from taxation, First Amendment rights would not be implicated. Although Florida Administrative Code Rule 12A-1.008(1)(c)2 states that a newspaper "is customarily printed on newsprint," the record indicates that this criterion alone is not dispositive. Moreover, this examination of the type of paper does not negate the fact that rule 12A-1.008(1)(b)5 authorizes an examination of the content of the publication. The laudable environmental goal of recycling Florida's newspapers can be served without the state passing judgment as to what information is "current" and "appeals to a wide spectrum of the general public."
A tax classification scheme based upon content places a heavy burden on the State to justify its actions. The State has failed to meet that burden in this case. Neither of the reasons advanced by the State constitutes a compelling justification for the content-based taxation of publications. Thus, we hold that this tax scheme is invalid under the First Amendment.
The third issue we address relates to the proper remedy in this case. The trial court concluded that "the constitutionally-mandated remedy is to strike the unconstitutional tax or regulation." However, we do not find that the Constitution mandates a set course of action in a case such as this. In Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), the state of Texas argued that if its tax exemption for religious periodicals was invalid, then the proper course under state law would be to remove the exemption, rather than to extend the exemption to nonreligious periodicals. The Supreme Court responded that "[i]t is not for us to decide whether the correct response as a matter of state law to a finding that a state tax exemption is unconstitutional is to eliminate the exemption, to curtail it, to broaden it, or to invalidate the tax altogether." Id. at 8, 109 S.Ct. at 896.
Thus, we turn to Florida law to determine the proper remedy in this case. Section 212.05(1)(a), Florida Statutes (1987), levies a tax on "the sales price of each item or article of tangible personal property when sold at retail in this state." Section 212.05(1)(i) specifically states that sales of magazines are taxable transactions. Section 212.21, Florida Statutes (1987), provides in part:
(2) It is hereby declared to be the specific legislative intent to tax each and every sale ... set forth in this chapter... . [and] that should any exemption or attempted exemption from the tax or the operation or imposition of the tax or taxes be declared to be invalid, ineffective, inapplicable, unconstitutional or void for any reason, such declaration shall not affect the tax or taxes imposed herein, but such sale ... exempted or attempted to be exempted from the tax ... shall be subject to the tax ... to the same extent as if such exemption or attempted exemption had never been included herein.
(3) It is further declared to be the specific legislative intent to exempt from the tax ... only such sales ... to the extent that such exemptions are in accordance with the provisions of the constitutions of the state and of the United States.
Section 212.21 makes it clear that as between the imposition of the tax or the granting of an exemption, the tax shall prevail.
Accordingly, we affirm that portion of the trial court's order which holds that chapter 212 impermissibly burdens First Amendment rights and does not serve a compelling state interest. However, having *464 concluded that under state law the appropriate remedy is to strike the newspaper exemption granted by section 212.08(7)(w), Florida Statutes (Supp. 1988), we reverse that portion of the trial court's order which concludes that the appropriate remedy is to strike the tax imposed on magazines.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW and KOGAN, JJ., concur.
HARDING, J., dissents with an opinion, in which GRIMES, J., concurs.
McDONALD, J., recused.
HARDING, Justice, dissenting.
I respectfully dissent from the majority's holding that Florida's sales tax scheme is invalid under the First Amendment. I agree with the majority's finding that this tax of general applicability does not single out the press nor target a small group within the press. However, I do not agree with the majority's conclusion that the tax discriminates on the basis of the content of the speech. The plain language of the statute simply levies a tax on the retail sale of "magazines" and exempts the sale of "newspapers." The statute makes no reference to the content of the publications. Moreover, in statutory construction, statutes must be given their plain and obvious meaning and it must be assumed that the legislative body knew the plain and ordinary meaning of the words. Rinker Materials Corp. v. City of North Miami, 286 So.2d 552 (Fla. 1973). In this case, the terms "magazine" and "newspaper" are words of common usage. Based upon the format and frequency of publication, any member of the general public can identify a publication as either a newspaper or a magazine without any reference to its contents. When the statutory classifications of "magazine" and "newspaper" are afforded their plain and ordinary meanings, it is clear that the language of the Florida statute does not discriminate between publications based upon content.
Both the Tennessee Supreme Court and the Iowa Supreme Court have considered the constitutionality of tax statutes which are almost identical to Florida's statute that taxes the sale of magazines but exempts the sale of newspapers. See Newsweek, Inc. v. Celauro, 789 S.W.2d 247 (Tenn. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991); Hearst Corp. v. Iowa Dept. of Revenue & Finance, 461 N.W.2d 295 (Iowa 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1639, 113 L.Ed.2d 735 (1991). In order to determine whether the statutory classifications were content-neutral or content-based, both courts examined the administrative rules that define what publications qualify for the newspaper exemption. The Tennessee Supreme Court determined that Tennessee's administrative rule specifying that publications contain matters of general interest and reports of current events was not a content-neutral requirement. Newsweek, 789 S.W.2d at 249. Finding no compelling justification for this content-based taxation, the Tennessee Supreme Court held that the tax was invalid under the First Amendment. Id. at 250. The Iowa Supreme Court reached the completely opposite conclusion, finding that "the focus [of the Iowa regulation] is not on the content of the journalism." Hearst, 461 N.W.2d at 303. The court explained that "while the classification of the writing as `news, articles of opinion (editorials), features, advertising, or other matter regarded as of current interest' is a consideration, ... the form and frequency of the publication are the primary factors for determining whether a publication qualifies for the Iowa sales and use tax exemption." Id.
This reasoning applies with equal force to Florida's sales tax scheme. The Department's regulations for implementing the newspaper exemption require that the publication contain "reports of current events and matters of general interest which appeal to a wide spectrum of the general public." Fla. Admin. Code Rule 12A-1.008(1)(b)5. However, like the Iowa tax scheme, the primary focus of these regulations is not on the content of the publication. Rather, the format and frequency of publication are the primary factors for determining whether a publication qualifies for the newspaper exemption. In order to constitute a newspaper, the regulations *465 provide that a publication "must be published at stated short intervals (usually daily or weekly)"; "must not, when successive issues are put together, constitute a book"; and "must be intended for circulation among the general public." Fla. Admin. Code Rule 12A-1.008(1)(b). Additionally, the regulations specify other noncontent-based attributes that a newspaper usually possesses, including that a newspaper is "normally eligible to carry legal notices or notices of process"; "customarily printed on newsprint"; and "usually delivered to the ultimate consumer by delivery to his home or place of business by employees of the publisher or by independent contractors under an arrangement with the publisher." Fla. Admin. Code Rule 12A-1.008(1)(c).
Such form and frequency focused rules do not pose the type of censorial threat that a content-based classification does. Thus, I find that First Amendment rights are not implicated by Florida's differential tax scheme, and that it need not be strictly scrutinized.
Finding no merit to the Magazine Publishers' claim that the differential tax violates their First Amendment rights, I next address the claim that the tax violates the Magazine Publishers' right to equal protection. Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose. Statutes are subjected to a higher level of scrutiny only if they interfere with the exercise of a fundamental right or employ a suspect classification. Regan v. Taxation With Representation, 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983). Neither a fundamental right nor a suspect classification is involved in this case. Moreover, "[1]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes." Id. Thus, Florida's tax classification need only meet this rational relationship standard in order to comply with the requirements of the Equal Protection Clause.
Under the rationality test, the Equal Protection Clause is not violated merely because "`another [statutory] classification ... would appear more reasonable.'" Newman v. Carson, 280 So.2d 426, 429 (Fla. 1973) (quoting Finlayson v. Conner, 167 So.2d 569, 571 (Fla. 1964)). To withstand an equal protection challenge, the statutory classification need not be drawn with pinpoint precision. The Court will uphold the classification if it is just, fair, and reasonably related to the subject and purpose of the regulation. Id. I find that the two reasons asserted by the Department for the differential taxation of magazines and newspapers meet this rational relationship test. Florida has a legitimate interest in encouraging the reading of newspapers through a price subsidy, thereby enhancing the general knowledge and literacy of its citizens. Florida has an equally valid interest in promoting the recycling of newspapers.
I find that the differential tax does not implicate First Amendment rights and does not violate the Equal Protection Clause. Thus, I would uphold the newspaper exemption as constitutional.[4]
GRIMES, J., concurs.
NOTES
[1] Section 212.05(1)(i), Florida Statutes (Supp. 1988), provides in pertinent part:

(1) ... [A] tax is levied on each taxable transaction or incident, which tax is due and payable as follows:
... .
(i) At the rate of 6 percent on the retail price of magazines sold or used in Florida.
Section 212.08(7)(w), Florida Statutes (Supp. 1988), which sets forth miscellaneous exemptions, provides:
(w) Newspapers.  Likewise exempt are newspapers.
[2] Florida Administrative Code Rule 12A-1.008(1)(b) provides:

(b) In order to constitute a newspaper, the principal purpose of the publication must be to disseminate news and contain at least the following elements:
1. It must be published at stated short intervals (usually daily or weekly).
2. It must not, when successive issues are put together, constitute a book.
3. It must be intended for circulation among the general public.
4. It must not be a magazine, as defined in subsection (3).
5. It must routinely contain reports of current events and matters of general interest which appeal to a wide spectrum of the general public. If the publication is intended for general circulation to the public and is devoted primarily to matters of specialized interests such as legal, mercantile, political, religious, or sporting matters, and it contains in addition thereto general news of the day, information of current events, and news of importance and of current interest to the general public, it is entitled to be classed as a newspaper.
[3] The Florida Press Association argues that any constitutional challenge to the Department's administrative rules must be brought through a chapter 120 rule challenge. This argument is without merit. See Cook v. Florida Parole & Probation Comm'n, 415 So.2d 845 (Fla. 1st DCA 1982) (Division of Administrative Hearings does not have jurisdiction to dispose of constitutional issues in a section 120.56 proceeding).
[4] I do not pass judgment on the prudence of such a tax exemption during a time of state budget crisis, but merely find that the exemption does not violate the Constitution. The legislature may want to revisit the wisdom of this exemption.