WOLF, Judge.
R. R. Donnelley & Sons Company (Donnel-ley) appeals from a final order denying appellant’s request for a refund of state sales taxes paid pursuant to section 212.08(5)(b), Florida Statutes, and declaring that the statute does not violate the Florida or federal constitutions. Donnelley claims (1) that section 212.08(5)(b)5., Florida Statutes, violates the freedom of the press guaranteed by the Florida and United States Constitutions; and (2) that section 212.08(5)(b)5. violates the Equal Protection Clauses of the Florida and United States Constitutions. We find no error in the trial court’s determination that the statute is constitutional, and we affirm.
Donnelley is in the business of printing books, magazines, financial material, advertisements, telephone directories, and catalogs, with operations at 45 major printing sites in 24 states. In 1991, Donnelley opened a printing plant in South Daytona Beach, and expanded that plant in 1993. At both times, Donnelley purchased capital equipment. The appellant filed an application for statutory exemption from sales tax for the equipment purchases, which was denied by the Department of Revenue (department), pursuant to section 212.08(5)(b)5., Florida Statutes.
Florida imposes a sales and use tax on purchases of tangible personal property. It assesses a six percent sales tax on the price of tangible personal property sold at retail, see section 212.05(l)(a)l.a, and imposes a corresponding use tax on the price of tangible personal property that, while not purchased in Florida, is used there. See § 212.05(l)(b). Sections 212.08(5)(b)l. and (5)(b)2., Florida Statutes, provide for a refund of taxes paid for the purchase of machinery and equipment used to start an operation which manufactures taxable personal property for sale and a partial refund of taxes paid for the purchase of machinery and equipment used to expand a business which manufactures taxable personal property for sale. The plaintiff was found ineligible for this refund by the department, based upon section 212.08(5)(b)5., Florida Statutes. That section provides,
*115 [t]he exemptions provided in subpara-graphs 1. and 2. do not apply to machinery or equipment purchased or used by electric utility companies, communications companies, phosphate or other solid minerals severance, mining, or processing operations, oil or gas exploration or production operations, printing or publishing firms, any firm subject to regulation by the Division of Hotels and Restaurants of the Department of business and Professional Regulation, or any firm which does not manufacture, process, compound, or produce for sale, ... items of tangible personal property.
On November 9, 1993, the appellant filed a complaint in circuit court challenging the validity of section 212.08(5)(b)5. under federal and state law. Appellant sought a declaratory judgment that section 212.08(5)(b)5. was constitutionally invalid, and sought a refund of all taxes paid under the provision as well as attorney’s fees and costs. Following a hearing on the matter, the trial court issued a written opinion upholding the statute in all respects.
In Leathers v. Medlock, 499 U.S. 489, 111 S.Ct. 1438, 113 L.Ed.2d 494 (1991), the United States Supreme Court addressed First Amendment concerns raised in regard to an Arkansas sales tax imposed on receipts from sales of goods and services which expressly exempted newspaper and magazine sales, but did not exempt cable television related services. While finding that a cable television operation is engaged in First Amendment-protected “speech,” the Supreme Court held that the Arkansas tax did not run afoul of the First Amendment. The Court held that the tax did not (1) single out the press;[1] or (2) target a small group of speakers;[2] or (3) discriminate on the basis of content of speech.[3] The Court held,
[t]he Arkansas Legislature has chosen simply to exclude or exempt certain media from a generally applicable tax. Nothing about that choice has ever suggested an interest in censoring the expressive activities of cable television. Nor does anything in this record indicate that Arkansas’s broad-based, content-neutral sales tax is likely to stifle the free exchange of ideas. We conclude that the State’s extension of its generally applicable sales tax to cable television services alone, or to cable and satellite services, while exempting the print media, does not violate the first amendment.
Relying on Leathers, the Florida Supreme Court in Department of Revenue v. Magazine Publishers of America, Inc., 604 So.2d 459 (Fla.1992), found that Florida’s chapter 212 sales tax is
a tax of general applicability which applies to receipts from the sales of all tangible personal property unless specifically exempted, and does not single out the press for special treatment.
Id. at 461 (emphasis added). The court in that case concluded that Florida “may impose a generally applicable tax on the press without raising first amendment concerns.” Id.
The appellant argues that section 212.08(5)(b)5. is not a generally applicable tax because it prohibits printers from obtaining an exemption that other manufacturers receive, and the exemption is a “printing tax” under which it has been singled out for taxation.
In Minneapolis Star and Tribune Co. v. Minnesota Commissioner of Revenue, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983), the Supreme Court discussed the potential evils of a tax that singles out a small portion of the press:
*116 A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected. When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency. See Railway Express Agency v. New York, 336 U.S. 106, 112-113, 69 S.Ct. 463, 467, 93 L.Ed. 533 (1949) (Jackson, J., concurring). When the State singles out the press, though, the political constraints that prevent a legislature from passing crippling taxes of general applicability are weakened, and the threat of burdensome taxes becomes acute. That threat can operate as effectively as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government. See generally, Stewart, “Or of the Press,” 26 Hastings L.J. 631, 634 (1975). “[A]n untrammeled press [is] a vital source of public information,” Grosjean, 297 U.S., at 250, 56 S.Ct., at 449, and an informed public is the essence of working democracy-
id at 585, 103 S.Ct. at 1371-1372.
In Globe Newspaper Co. v. Commissioner of Revenue, 410 Mass. 188, 571 N.E.2d 617 (1991), the Court recognized that the denial of an exemption to a tax of general applicability may also result in a violation of the First Amendment if it singles out the press. See also Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), holding that a denial of a tax exemption may result in a First Amendment violation.
The question before us is whether denial of the exemption affects a group of people so small as to be considered singling out the press for special treatment. Little guidance is provided in either the case law or the record in front of us as to when the group of people is so small as to when it constitutes differential treatment of the press. In the Minneapolis Star and Tribune case, it appears that the press was the only party subject to the tax. The same is true in Globe Newspaper Co. v. Commissioner of Revenue, supra. The statute in the instant case denies the tax exemption to not only printing or publishing firms, but also other businesses, such as mining, gas and oil exploration, restaurants, and utilities. While there is some dispute concerning the applicability to other groups, both sides concede that the exception also applies to the restaurant industry. We are unwilling to rule that the statute on its face as a matter of law impermissibly singles out the printing industry. No proof has been presented concerning the size or the impact on the other parties who are denied the exemption. On the record before us, we, therefore, decline to find that the trial court erred in determining that the statute did not violate the First Amendment.
We also find appellant’s equal protection argument to be unpersuasive. In Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311 (Fla.1994), the Supreme Court addressed the appropriate test in determining whether the classification in a taxing statute is subject to a challenge based on equal protection.
In Leathers, supra, it was determined that subjecting one portion of the media to a tax while exempting another portion was not necessarily invalid. See also Reuters America, Inc. v. Sharp, 889 S.W.2d 646 (Tex.Ct.App.1994). States are given great latitude in making the tax classifications, and the burden is very heavy on one who seeks to overturn such a classification. Madden v. Commonwealth of Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). The most direct explication of this standard is found in Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1910), in which the Supreme Court held,
When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.
(Emphasis added).
Under this analysis, sections 212.08(5)(b)l., 2., and 5., Florida Statutes, fully meet equal protection standards. The Legislature could well have determined that certain businesses offered special advantages or benefits to Florida such as job creation, increased *117 spending in local communities, improvement to quality of life in Florida, acting as a magnet to draw other businesses to Florida, or increasing tourist travel to Florida. These would all be rational grounds for a decision to relieve a company of the imposition of the tax. The Legislature could also well have determined that printers did not offer a particular advantage or benefit to Florida, or that any benefit obtained would not offset the loss of revenue caused by an exemption. For example, a modern printing plant such as Donnelley’s requires a large investment in machinery, but is highly automated. The Legislature could well have determined that this state of facts did not warrant extending the exemption to printing or publishing firms. In addition, printers, unlike other members of the media, produce tangible personal products. Thus, other media, such as radio and television, would not be eligible for the sales tax exemption contained in sections 212.08(5)(b)l. and 2. for they do not produce tangible personal products. The Legislature could have determined that one segment of the media should not receive preferential treatment. Thus, the Legislature’s decision to exclude printers or publishers from the exemption contained in sections 212.08(5)(b)l. and 2., Florida Statutes, has a conceivable rational basis and does not violate the Equal Protection Clauses of the Florida and United States Constitutions.
MINER and VAN NORTWICK, JJ., concur.

. Id. at 445-446, 111 S.Ct. at 1443 (citing Grosjean v. American Press Co., 297 U.S. 233, 244-249, 56 S.Ct. 444, 446-449, 80 L.Ed. 660, 665-668 (1936); Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue, 460 U.S. 575, 585, 103 S.Ct. 1365, 1371-1372, 75 L.Ed.2d 295, 304-305 (1983)).

. Id. at 445-449, 111 S.Ct. at 1443-1444 (citing Minneapolis Star, 460 U.S. at 575, 103 S.Ct. at 1366-1367; Arkansas Writer's Project, Inc. v. Ragland, 481 U.S. 221, 229, 107 S.Ct. 1722, 1727-1728, 95 L.Ed.2d 209 (1987)).

. Id. at 447-449, 111 S.Ct. at 1444 (citing Arkansas Writers, 481 U.S. at 229-231, 107 S.Ct. at 1727-1728).