**LAKE COUNTY BEVERAGE COMPANY, INC., Appellant (Plaintiff Below),**

**The Stroh Brewery Company, Appellant (Intervenor-Plaintiff Below),**

**Indiana Alcoholic Beverage Commission, Appellant (Defendant Below),**

v.

**21ST AMENDMENT, INC., Appellee (Intervenor-Defendant Below),**

**DeLock's # 1, Inc., DeLock's # 3, Inc., DeLock's # 6, Inc., DeLock's # 11, Inc., and DeLock's # 14, Inc., Appellees (Intervenor-Defendants Below).**

No. 1–182A5.

Court of Appeals of Indiana,
First District.

Nov. 24, 1982.

Rehearing Denied Jan. 4, 1983.

Daniel P. Byron, Phillip A. Terry, McHale, Cook & Welch, P.C., Indianapolis, for appellant Lake County Beverage Co., Inc.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Asst. Atty. Gen., Indianapolis, for appellant Indiana Alcoholic Beverage Com'n.

Daniel F. Evans, Jr., Robert R. Clark, Bayh, Tabbert & Capehart, Indianapolis, for appellant Stroh Brewery Co.

William C. Barnard, James E. Hughes, Sommer & Barnard, Indianapolis, for appellee 21st Amendment, Inc., DeLock's # 1, Inc., DeLock's # 3, Inc., DeLock's # 6, Inc., DeLock's # 11, Inc., and DeLock's # 14, Inc.

ROBERTSON, Judge.

The Lake County Beverage Co. (LCB), the Stroh Brewery Company (Stroh) and the Indiana Alcoholic Beverage Commission (ABC) appeal the judgment rendered in favor of the 21st Amendment Inc. (21st Amendment) and various stores of De-Lock's, Inc. LCB, Stroh, and the ABC challenge the legality of quantity discounts in the sale of beer.

We affirm.

This case was initiated by LCB when it filed a complaint against the ABC and another defendant, Kuhn Beer Distributors, Inc. (Kuhn). LCB sought $100,000 in damages from Kuhn for its loss of business due to Kuhn's "illegal discounts". LCB also sought a permanent mandatory injunction against the ABC to enforce provisions of Ind.Code § 7.1–5–5–7, which, according to LCB, prohibits quantity discounts. The complaint was amended to include a count to mandate the ABC's Commissioners to enforce IC 7.1–5–5–7. Stroh and 21st Amendment were permitted to intervene in the action.

The case was tried before the trial court on stipulations between LCB and the ABC. (The intervenors were not permitted to introduce evidence.) LCB's claim for damages against Kuhn was severed from the present appeal.

The ABC sought to dismiss the complaint alleging that the trial court lacked jurisdiction because LCB does not have a property right in its liquor license. The ABC also argued that any action by the trial court would violate the separation of powers doctrine. The motion to dismiss was denied. While awaiting the trial court's determination, the ABC attempted to dispose of the controversy by issuing a resolution prohibiting quantity discounts. The resolution was enjoined and in its brief, the ABC concedes the resolution was not in effect.

The ABC alleges the trial court erred in denying its motion to dismiss. It argues that IC 7.1–3–1–2 holds that a liquor permit is not property. This section provides:

A permitee shall have no property right in a wholesaler's, retailer's, or dealer's permit of any type.

The ABC alleges that since LCB has no property right in its permit, LCB had no right to seek a writ of mandate against the ABC or damages from Kuhn.

The trial court concluded it had jurisdiction based upon *Midwest Beverage Co. v. Gates,* 61 F.Supp. 688 (N.D.Ind.1945). In *Gates,* the court recognized that a permit holder did not have a vested interest in his permit because no binding limitation can be placed on a state's exercise of its police power through legislative action, but stated:

On the other hand the use of the permit, once granted, has the elements of property irrespective of what the legislature may declare about the permit itself, and except for the omnipresent and unlimited power of the state to revoke or modify the terms of the permit in the interest of the public welfare, the use of such permit, if not the permit itself, is property within the meaning of the due process clause of the Federal Constitution.

61 F.Supp. 688.

The trial court correctly determined that it had jurisdiction. The position that the use of a permit is in the nature of a property right is also supported by the statute's legislative history. The previous statute IC 1945, 7–2–1–14 (Burns Code Ed.), provided:

No person shall be deemed to have any property right in any beer wholesaler's permit, beer retailer's permit, beer dealer's permit, liquor wholesaler's permit, liquor retailer's permit, liquor dealer's permit, wine wholesaler's permit, wine retailer's permit, or wine dealer's permit,

nor shall said permit itself or *the enjoyment thereof be considered a property right.* (Emphasis added.)

A fundamental rule of statutory construction is that an amendment changing a prior statute indicates a legislative intention that the meaning of the prior statute has been changed. It raises a presumption that the legislature intended to change the law unless it clearly appears that the amendment was passed in order to express the original intention more clearly. *Ind. Alcoholic Beverage Comm. v. Osco Drug, Inc.,* (1982) Ind.App., 431 N.E.2d 823. We can only conclude that the legislature, by deleting the language regarding the enjoyment of a permit as a property right, intended that a permit holder has a recognizable interest in the use of his liquor permit.

Another point supports the trial court's jurisdiction because although the ABC has argued that a permit holder has no property interest in his permit, IC 7.1–5–5–7 is a criminal section. Pursuant to IC 7.1–5–1–8, a violation constitutes a class B misdemeanor and is punishable by a fine of not more than $1000 and by imprisonment of not more than 180 days. Due to the nature of these penalties, it cannot be argued that the parties are merely seeking a determination of a property interest. Moreover, an interpretation of IC 7.1–5–5–7 is necessary to determine if Kuhn is liable for LCB's alleged loss of business.

The ABC alleges that the trial court's decision violates the separation of powers doctrine.[1] The doctrine recognizes that our state government, as well as our federal government, is divided into three independent and integral branches: executive, legislative, and judicial. Each branch is limited from acting outside the sphere of its authority. *Carlson v. State ex rel. Stodola,* (1966) 247 Ind. 631, 220 N.E.2d 532. The ABC argues that *Ind. Alcoholic Bever-*

---

1. This argument is especially curious in the light of the ABC's attempt to usurp the trial court's authority during the course of this litigation by passing a resolution which it now concedes was ineffective. We strongly suggest that the ABC explore the parameters of this doctrine, recognize its applicability to executive agencies, and refrain from this activity in the future.

*age Comm. v. McShane,* (1976) 170 Ind.App. 586, 354 N.E.2d 259, is controlling.

In *McShane,* the permit holders sought to prohibit the ABC from exercising its discretion to revoke or amend its rules and regulations regarding advertising and quantity discounts. In the present case, LCB sought to compel the ABC to enforce a statute. It cannot be disputed that it is the duty of the ABC to enforce IC 7.1–5–5–7.

 The ABC stipulated that prior to July 12, 1973, it prohibited quantity discounts, but after that date, disagreement existed among the Commissioners about whether this practice was illegal. The stipulations also revealed that the ABC had not investigated any complaints regarding quantity discounts since 1973 nor had it examined the practice of quantity discounts to determine whether the discounts were justified by lower courts. Unlike *McShane,* where the permit holders sought to bypass an administrative function, this case involves the interpretation of a statute, a function which is clearly within the sphere of the judiciary. The ABC is not arguing that the trial court prohibited it from conducting its statutory duties, but instead it is merely attempting to rationalize its failure to fulfill its duty.

 The second issue is whether the trial court erred by holding that IC 7.1–5–5–7 allows quantity discounts. This section provides:

> It is unlawful for a permitee in a sale contract to sell alcoholic beverages to discriminate between purchasers by granting a price, discount, allowance, or service charge which is not available to all purchasers at the same time. However, this section does not authorize or require a permitee to sell to a person to whom he is not authorized to sell under this title.

The trial court held that the word "available" must mean the discount was offered to all buyers.[2]

Stroh, LCB, and the ABC argue that IC 7.1–5–5–7 is analogous to the Robinson-Patman Act, 15 U.S.C. § 13, and that the word "available" as contained in IC 7.1–5–5–7 must be construed to mean "functionally available". Stroh, LCB and the ABC also allege that the legislature has acquiesced to the ABC's interpretation and that the trial court's ruling violates IND.CODE §§ 7.1–5–5–10 and 7.1–5–5–11.

The parties stipulated that not all retailers can purchase beer in sufficient quantities to obtain the best discount. LCB argues that the larger discounts are not functionally available to all retailers because not all retailers have sufficient sales volume, storage space or cash flow to buy the larger quantity. Stroh and LCB assert that the holding of *Federal Trade Commission v. Morton Salt Co.,* (1948) 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196 is controlling in the present case.

In *Morton,* the Supreme Court ruled that Morton offered a discount system which was theoretically available to all purchasers, but violated § 2 of the Robinson-Patman Act because the discounts were not "functionally available" to all. Stroh and LCB argue that the trial court erred in rejecting this construction for IC 7.1–5–5–7 and urge us to adopt it.

The trial court correctly determined that IC 7.1–5–5–7 is not analogous to § 2 of the Robinson-Patman Act.[3] IC 7.1–5–5–7 is distinguishable because it does not require elements of proof needed for a § 2 claim. To establish a prima facie case pursuant to § 2, the plaintiff must demonstrate: (1) "the alleged price discrimination meets the 'in commerce' requirement that 'either or any' of the purchases involved are in [interstate] commerce"; (2) that the price discrimination existed between purchasers of products of like grade and quality; and (3) that the effects of the discrimination "may

**2.** Kuhn offered the following system of discounts:

| Cases | Price |
|-------|-------|
| 25–49 | $6.55 |
| 50–74 | 6.30 |
| 75–149 | $6.25 |
| 150–299 | 6.15 |
| 300 + | 6.10 |

**3.** 15 U.S.C. § 13 is referred to as § 2 of the Robinson-Patman Act.

be substantially to lessen competition or tend to create a monopoly". *William Inglis & Sons Baking Co. v. ITT Continental Baking Company, Inc.*, 461 F.Supp. 410, 420 (N.D.Cal.1978).

 § 2 also contains defenses which distinguish it from IC 7.1–5–5–7. It is a defense to a prima facie case if the defendant can prove the price discrimination is a result of cost differences, is a good faith response to a competitor's prices, or results from a change in market conditions. *Hoyt Heater Co. v. American Appliance Mfg. Co.*, 502 F.Supp. 1383 (N.D.Cal.1980).

There is another compelling reason to reject the analogy between IC 7.1–5–5–7 and the Robinson-Patman Act. In its report on the Robinson-Patman Act, the Department of Justice concludes that the Act is ineffective and irrelevant to the protection of small businesses. The report states:

> The simple truth is that Robinson-Patman is a false promise: it provides little long-run protection to small businessmen. It is just not possible to legislate equality in a free market system. The basic force in changing the structure of the American marketplace is the consumer. It is the consumer who decides the type of retail establishment with which he or she wishes to deal. The consumer makes the choice as to whether he or she wishes the personalized service and convenience of a small establishment, providing special goods with special know-how, or the lower prices, relatively less service, and greater inconvenience of a larger store.

U.S. Department of Justice Report on the Robinson-Patman Act, (1976) p. 254.

In rejecting the Robinson-Patman analogy, the trial court examined *National Distributing Co. v. United States*, 626 F.2d 997 (D.C.Cir.1980) and urged the ABC to consider the concepts of that opinion. Stroh and LCB argue the trial court's reliance on this opinion is misplaced. The *National* opinion is relevant because the court rejected the argument that the Robinson-Patman

Act could be enforced through the provisions of the Federal Alcohol Administration Act, 27 U.S.C. § 201 *et seq.*, finding that the acts were separate and distinct. It was not error for the trial court to recognize this distinction.

 LCB and Stroh argue that IC 7.1–5–5–7 is designed to prevent monopolization and anticompetitive price discrimination. The language of the statute is limited to prohibiting discrimination of prices, discounts, allowances or service charges which are not available to all purchasers at the same time. While IC 7.1–5–5–7 clearly outlaws discrimination, nothing within that statute's language supports the characterization that it is designed to prevent anticompetitive prices or monopolization. The legislation designed to prohibit restraint of trade and monopolization is contained in Title 24. Furthermore, there is no evidence in the record to show predatory pricing or sufficient market strength by Kuhn for it to constitute a monopoly.

The trial court did not err by rejecting the analogy between IC 7.1–5–5–7 and § 2 of the Robinson-Patman Act. There is no similarity of language between the two statutes. There are different elements of proof and defenses in § 2 not contained in IC 7.1–5–5–7. It would be absurd to adopt an interpretation of a federal regulatory act which has been discredited by its administering agency.

We remain unpersuaded that IC 7.1–5–5–7 must be interpreted to require functional availability among all purchasers. The argument that not all purchasers can afford to purchase larger quantities does not support an argument of discrimination. The discount is available to the small quantity purchaser, but such purchaser lacks the economic resources to take advantage of the discount. A requirement of functional availability invites this court to discriminate against those purchasers with sufficient economic resources to buy the larger quantities, thus, prohibiting greater discounts.[4]

---

4. There is no evidence to infer that Kuhn's discount system was formulated in such a manner that only selected purchasers could qualify for the discounts. If there existed any evidence of such a system, the result of this case could be different.

Such a requirement is merely a request to limit competition.

■ LCB argues that the trial court's ruling contravenes the ABC's long standing interpretation of the statute, thus violating the doctrine of legislative acquiescence. This doctrine of statutory construction holds that long standing administrative interpretations, which date from the time a statute was enacted and which have not been altered by subsequent changes in the statute, raise a strong presumption that the legislature has acquiesced to the administrative agency's interpretation. *Baker v. Compton,* (1965) 247 Ind. 39, 211 N.E.2d 162. However, the doctrine only applies where the interpretation dates from the time of legislative enactment or is of a long standing nature. Administrative interpretations which are incorrect are entitled to no weight. *Beer Distributors of Indiana v. ABC,* (1982) Ind.App., 431 N.E.2d 836.

■ The record reveals that the ABC had not maintained a long standing administrative interpretation of IC 7.1–5–5–7. Prior to July 12, 1973, the ABC interpreted this section to prohibit quantity discounts. Since that date, a split of authority among the Commissioners has existed and no action regarding quantity discounts occurred. Although the ABC argued at trial that quantity discounts are prohibited, the record establishes that the ABC's interpretation is not of a long standing nature and legislative acquiescence is inapplicable to interpreting IC 7.1–5–5–7.

Legislative acquiescence is also inapplicable because the ABC's interpretation is incorrect. The trial court ruled that Kuhn's discounts did not violate IC 7.1–5–5–7 because the discounts were freely available to all purchasers and that nothing was required of the purchaser other than the ability to order and pay for the purchase. The trial court continued by saying the ABC was merely trying to protect the economic interests of retailers and attempting to eliminate competition.

■■ The trial court correctly interpreted IC 7.1–5–5–7 to authorize the quantity discounts. The statute, by incorporating the use of the word discount in express language, manifests the intention of the legislature to recognize the practice of discounting. The statute prohibits a discount which "is not available to all purchasers at the same time". To reach the construction of IC 7.1–5–5–7 forwarded by LCB, Stroh, and the ABC, this court would have to accept the analogy to § 2 of the Robinson-Patman Act. We previously concluded that such a construction would be absurd because that section is in disfavor with its administering agency. In construing a statute, this court must arrive at the legislature's apparent intention and we are required to prevent absurdity and hardship, and to favor public convenience. *Sidell v. Review Bd. of Indiana Employment Sec. Division,* (1981) Ind.App., 428 N.E.2d 281. We are not persuaded that the trial court erred in holding that IC 7.1–5–5–7 does not prohibit quantity discounts which are offered to all purchasers.

■ LCB argues that the trial court's ruling renders IC 7.1–5–5–10 and 7.1–5–5–11 meaningless. These sections prohibit the receipt and donation of rebates and gifts by liquor manufacturers and permittees in relation to their business. The parties stipulated that the beer prices varied solely upon the amount of beer purchased. LCB has confused the distinctions between discounts and gifts and rebates. A discount is a deduction from an original price or debt. Webster's New World Dictionary (1968). There is no merit to an argument that Kuhn was offering gifts or rebates.

■ The ABC argues that the trial court's ruling contravenes the general purposes stated in IC 7.1–1–1–1 which provides:

Sec. 1. General Purposes. The general purposes of this title are:

(a) to protect the economic welfare, health, peace and morals of the people of this state;

(b) to regulate and limit the manufacture, sale, possession, and use of alcohol and alcoholic beverages; and,

(c) to provide for the raising of revenue.

The ABC alleges that the State will lose revenue if the trial court's ruling is affirmed. This argument is merely an invitation for speculation because no credible evidence of record was offered to establish this proposition. The argument fails for a lack of proof. See, *Pearson v. First Nat. Bank of Martinsville,* (1980) Ind.App., 408 N.E.2d 166.

The judgment of the trial court is affirmed.

RATLIFF, P.J., and NEAL, J., concur.